Oliver *v.* Blake.

SAMUEL M. OLIVER *versus* SAMUEL H. BLAKE *&* *al.*

The liability of an indorser of a writ is incurred at the time the indorsement is made.

If such liability be incurred before the Revised Statutes went into operation, although the writ against the indorser may be sued out afterwards, the provisions of the eighteenth section of chapter one hundred and fourteen of those statutes do not apply.

Under the laws in relation to execution debtors, all that can be required of a plaintiff in *scire facias* against an indorser of a writ, where the indorsement was made before the Revised Statutes had effect, is to show, that within a year after the judgment for costs, an execution issued and was seasonably put into the hands of an officer for service, and that within the time it had to run he has caused to be done whatever was reasonably practicable to obtain payment from the execution debtor.

In a suit against an indorser of a writ, parol evidence is admissible, on the one side, and on the other, to show the ability and inability of the execution debtor, provided the same be not inconsistent with the return of the officer on the execution against him.

THIS was a writ of *scire facias*, dated Feb. 9, 1843, against the defendants as indorsers of a writ in favor of one Gipson against the present plaintiff, sued out Sept. 18, 1837.

At the District Court, June Term, 1844, the parties agreed upon a statement of facts; from which it appeared, that on June 15, 1840, Oliver recovered judgment against Gipson for costs of suit; that execution issued on the judgment; that on Oct. 5, 1840, Gipson was arrested on the execution, and discharged on giving a poor debtor's bond; that the debtor made no disclosure and the bond was forfeited; that a suit was seasonably commenced upon the bond, and judgment recovered June 10, 1841; that an execution was issued upon this judgment, and Gipson and his surety were arrested thereon on Sept. 9, 1841, and discharged from that arrest on the same day by giving a poor debtor's bond. And if admissible on objection made thereto, it was agreed, that Gipson and his surety disclosed, took the poor debtor's oath before two justices of the peace and of the quorum on March 9, 1842, and were discharged by a certificate in due form of law; neither having disclosed any property on the examination. And if admissible, on objection made, it was agreed that the plaintiff could prove,

by parol evidence, that both Gipson and his surety were insolvent from 1838 to the then present time. The Court were authorized to enter a nonsuit or default, as their opinion should be.

*Wilson*, for the plaintiff.

There has been due diligence used to collect the execution. *Ruggles* v. *Ives*, 6 Mass. R. 494 ; *Wilson* v. *Chase*, 20 Maine R. 385.

And the inability of Gipson, the original plaintiff, is shown in three different modes. By the officer's return on the first execution, showing the arrest and discharge on giving the poor debtor's bond. 20 Maine R. 385. By the disclosure and discharge of Gipson and his surety under the poor debtor act of Rev. Stat. c. 148. The certificate is conclusive. 3 Fairf. 415 ; 13 Maine R. 239 ; 17 Maine R. 96 ; 18 Maine R. 152 ; 19 Maine R. 111 and 452. And thirdly, by the parol evidence of the inability of both Gipson and his surety.

The action is not barred by the statute of limitations. It is not affected by the Revised Statutes, because the cause of action accrued prior to the time those statutes went into operation, and is expressly excepted. And if those statutes did purport to take away our vested rights, the act would be unconstitutional and void.

*Blake*, for the defendants.

Due diligence has not been used to collect the money of the original plaintiff. This should appear to have been done by the officer's return. And if it does not, parol evidence is inadmissible to supply the omission. *Wilson* v. *Chase*, 20 Maine R. 390. A return on the execution, that the debtor has been arrested and discharged by giving a bond, is not even *prima facie* evidence of inability. *Dillingham* v. *Codman*, 18 Maine R. 74.

But if the plaintiff ever had any cause of action against the defendants, it is barred by the statute of limitations. Rev. Stat. c. 146, § 6. There was time enough to have brought the suit after the cause of action accrued and before the Rev.

Stat. went into operation, and the act is constitutional. *Smith* v. *Morrison*, 22 Pick. 430. The cause of action is preserved by the repealing act, but the remedy is only under the provisions of the Revised Statutes. Statutes of limitation affect the remedy only.

Instead of proceeding against the present defendants, the plaintiff elected to pursue a different remedy, and introduced a new party, the surety on the bond. Such delay and election have exonerated them.

The opinion of the Court was drawn up by

WHITMAN C. J. — The liability of the defendants originated from an indorsement of a writ, sued out in 1837, in favor of one Gipson, against the present plaintiff; and was incurred at that time. *Thomas* v. *Washburn & al.* recently decided in this county, but not yet reported. (*Ante* p. 331.) And such liabilities are expressly excluded from the operation of c. 114, § 18, of the Revised Statutes.

But this *scire facias*, having been sued out since the adoption of those statutes, the defendants contend, that c. 146, § 6, of those statutes, provides a bar against the maintenance of it. The section provides, " that all actions, against an indorser of a writ, must be commenced within one year next after judgment entered in the original action." But it is very clear, that this section cannot apply to this case, because the judgment in the original action had been recovered more than a year before those statutes were in force. If it could be believed to have been the intention of the legislature to extend that provision to such cases it would be a nugatory act, as it would impair, or rather annul, the obligation of a contract. Besides : — the repealing act, forming a part of the Revised Statutes, § 2, expressly saves to parties all rights of action then existing. This right of action, therefore, may be regarded as unquestionably saved from the limitation contended for.

It is further insisted, that it does not appear of record, as it ought, in order to charge the defendants, that, upon the execution issued on the original judgment, the debtor therein

avoided, or was unable to discharge the same. It is not questioned, that such an execution issued, and was duly returned within a year after the rendition of judgment, on which the officer, to whom it had been committed for service, had returned, that, for the want of property, he arrested the body of Gipson, and took bond, as provided by law, that he would cite the creditor, and disclose, &c. within six months. But it is contended, that this does not show, that the debtor avoided, or was unable to pay the amount for which the execution was issued.

In *Ruggles* v. *Ives*, 6 Mass. R. 495, C. J. Parsons held that a *non est inventus returned*, was conclusive upon the question of avoidance; and that a commitment was *prima facie* evidence of inability. The last part of this opinion has been commented upon, and explained in *Harkness* v. *Farley*, 2 Fairf. 491. The provisions of our statutes, since the decision in *Ruggles* v. *Ives*, in reference to debtors arrested on execution have been much varied; so that now it is considered, that a commitment is hardly to be deemed even *prima facie* evidence of inability; for one may, for divers purposes, suffer himself to be committed, when in possession of ample means to pay the debt.

But in the present case, there was no commitment. By statute a debtor, upon being arrested, had a right to give a bond, as was done in this case, and thereby prevent a commitment; and secure a credit of six months further, in which to make payment, or to obtain a discharge. It might follow, then, if an execution be issued within the year, and the debtor be thereupon arrested, that no record evidence of his avoidance or inability to pay the debt, would exist. Hence all that can reasonably be required of a plaintiff in *scire facias*, in such cases, is to show, that, within the year after judgment, an execution issued, and was seasonably put into the hands of an officer for service, and that, within the time it had to run, he had caused to be done, whatever was reasonably practicable, to obtain payment from the execution debtor.

It results, then, that evidence of the inability of such debtor

may be sought for elsewhere, than from what may appear of record in the original action, or on any execution issued on the judgment recovered in it. Accordingly it was held in *Harkness* v. *Farley*, and *Thomas* v. *Washburn & al.* before cited, and in *Pallister* v. *Little*, 6 Greenl. 350, that parol evidence was admissible, on one side, and on the other, to show the ability and inability of the execution debtor, provided the same were not inconsistent with the return of the officer on the execution against him.

In the case before us, after showing the execution issued, and arrest within the year, and the giving of the bond as by law allowed, the plaintiff proved, that the debtor forfeited his bond; and that on due process thereon, and judgment therein obtained, that the debtor and his surety were duly arrested on execution, and gave bond, as the debtor himself had done before; and that, after due proceedings were had for the purpose, they were both discharged, disclosing no property, not exempt by law from attachment, upon taking the poor debtor's oath. And, moreover, the plaintiff offered testimony, which would have established the fact, that both Gipson and his bondsman had been insolvent ever since, and for years before the rendition of the judgment against Gipson. We cannot, therefore, hesitate in coming to the conclusion, that the plaintiff had used due diligence to collect his execution against Gipson; and had failed of success by reason of his inability to pay the amount for which it had been issued. The defendants must, therefore, as agreed, be defaulted.